# HELEN M. COOK v. MODERN BROTHERHOOD OF AMERICA.[1]

### May 12, 1911.

### Nos. 16,976—(62)

**Life insurance — prohibited occupation — mining brakeman in pit mine.**
Action upon a certificate issued by the defendant, a fraternal order. Its by-laws provided that persons engaged in the occupation of a railway freight brakeman or switchman should not be eligible to beneficial membership, and that a person should be held to be engaged in such prohibited occupations when the duties incident to his employment required him to perform any of the duties belonging to the prohibited occupation. The occupation of the insured was that of a mining brakeman, in an open pit mine, in the operation of stripping cars.

*Held,* construing the by-laws, that the insured was not a "railway freight brakeman" or "railway freight switchman," within their meaning.

[1]Reported in 131 N. W. 334.

Action in the district court for St. Louis county to recover $1,000 upon an insurance certificate of defendant. The defense was that plaintiff's husband was engaged in a prohibited employment. The reply alleged that defendant repeatedly represented to the insured that his employment was not within the class of labor classified by defendant as railway freight brakeman, but was mere common labor and not railroad service, and that within the meaning of its articles, laws, by-laws, rules and regulations it was not prohibited, and that the railway service by it prohibited pertained solely to employment upon commercial roads, and it further represented to the insured that by engaging in said work no rights would be forfeited under the policy; that relying upon such representations insured became a member of defendant brotherhood; that within a few days after the issuance of the certificate of membership, the insured entered upon employment on a dinkey locomotive and dump cars in stripping operations, of which fact defendant and its agent had full notice and knowledge, and continued thereat until the time of his death, during which period defendant knew of and consented to the employment and without objection and without informing insured his policy would be forfeited; that it received his dues and assessments and continued to treat him as a member in good standing until his death. The case was tried before Dibell, J., who directed a verdict in favor of plaintiff for the amount of the policy. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Washburn, Bailey & Mitchell* and *A. C. Gillette,* for appellant.
*John Jenswold, Jr.,* for respondent.

START, C. J.

The defendant is a fraternal beneficial association engaged in the business of insuring the lives of its members. On April 6, 1909, it accepted the plaintiff's husband, John G. Cook, hereafter referred to as the insured, as a member of the order, and issued to him a certificate, whereby it agreed to pay to her, in case of his death while in good standing, the amount of one full assessment on all members, not exceeding $1,000. The certificate stipulated that the by-laws

of the order should be a part of the contract, of which the here material ones are these:

"Sec. 104.—Prohibited Occupations.—Persons engaged in the following kinds of business or employment shall not be eligible to beneficial membership in this society, except as herein provided: Railway freight brakeman, freight conductor, engineer, fireman, switchman, switch tender, lamp trimmer or lamp tender in railroad yards. * * *

"Sec. 105.—When Engaged in Prohibited Occupation.—A person shall be held to be engaged in any of the foregoing occupations when the duties incident to his employment require him to perform any of the duties belonging or pertaining to such prohibited occupation."

On May 20, 1909, the insured was accidentally killed, on the Missabe Range, in the manner hereafter stated. He was then in the service of the Commodore Mining Company, hereafter referred to as the mining company.

This action was brought by the plaintiff in the district court of the county of St. Louis to recover the amount of the certificate. The defense was that the insured, at the time of his death, was engaged in the prohibited occupation of a railway freight brakeman within the meaning of the by-laws. The evidence relevant to this issue was practically undisputed, and it was conceded by the defendant that, if the plaintiff was entitled to recover at all, she was entitled to $1,000. Thereupon each party moved for an instructed verdict. The defendant's motion was denied, the plaintiff's granted, and the jury accordingly returned a verdict for her for $1,000 and interest. The defendant appealed from an order denying its motion for judgment notwithstanding the verdict or a new trial.

The evidence shows the facts following: The insured in his application described his occupation as that of a common laborer, upon the suggestion of a deputy of the order, who took the application, after the insured had told him that he was going to work in the mine as a brakeman. The mining company was engaged in mining only. It did, however, use in its mining operations a system of railway tracks of standard gauge, aggregating in length some three miles. The regular employment of the insured in the mine at the time of

his death was that of a mining brakeman on trains used for stripping purposes; that is, removing the overburden of dirt from the ore. The motive power of the stripping cars was a small standard freight engine. The stripping cars were not provided with brakes, and the duty of a mining brakeman, and of the insured, was to spot the stripping cars, both when they were being loaded in the pit and unloaded at the dump. It is not entirely clear from the record what the insured was doing at the time of the accident, resulting in his death. There were near the coalyard track at the time an engine and three ore cars, used in bringing coal to the mine, which belonged to the Great Northern Railway Company. The insured was struck by these cars or the engine. The evidence would justify the conclusion that he was then attempting to couple the cars, but it was not done in pursuance of his duty as a mining brakeman.

The question, in view of the facts stated, is whether the insured was engaged in the occupation or employment of a railway freight brakeman or switchman at the time of his death, within the meaning of the by-laws of the defendant. The certificate, if there be any fair doubt as to its meaning, must be construed most strongly against the defendant; for the language used was selected by it for its own benefit. The mining company did not operate a freight railway, although it was operating a railroad, within the meaning of R. L. 1905, § 2042, abolishing the fellow servant rule as to railroad corporations. Kline v. Minnesota Iron Co., 93 Minn. 63, 100 N. W. 681.

It is reasonably clear, from the face of section 104 of the defendant's by-laws, that the occupation of the insured as shown by the evidence was not that of a railway freight brakeman or switchman; but the doubt, if any, arises from the provisions of section 105 as to when a member shall be held to be engaged in a prohibited occupation. If this last section were construed with literal and technical exactness, it would indefinitely enlarge, by construction, the list of prohibited occupations, and the certificate would prove a trap, instead of a fair indemnity contract—a result not intended by either party. The two sections must be construed together, and liberally, so as to give effect to the intention of the parties. So construing

them, we are of the opinion that all prohibited occupations are enumerated in section 104, and that section 105 is intended to prevent an evasion of the prohibition by the insured in engaging in an occupation the duties incident to which are substantially the same as those incident to an expressly prohibited occupation. We therefore hold that the insured was not a railway freight brakeman or switchman, within the meaning of the by-laws.

Order affirmed.